Adam S. Paris (SBN 190693)
parisa@sullcrom.com
Diane L. McGimsey (SBN 234953)
mcgimseyd@sullcrom.com
Caroline M. L. Black (SBN 350453)
blackcar@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:   (310) 712-6600
Facsimile:   (310) 712-8800

*Attorneys for Defendants PacWest Bancorp, Matthew P. Wagner, Paul W. Taylor, Bart R. Olson, William J. Black and Kevin Lewis Thompson*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC TAN, Individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>               v.<br><br>PACWEST BANCORP, MATTHEW P. WAGNER, PAUL W. TAYLOR, BART R. OLSON, WILLIAM J. BLACK, and KEVIN LEWIS THOMPSON,<br><br>                              Defendants. | Case No. 8:23-cv-01685-JWH-ADS<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>**[Opposition to Request for Judicial Notice; Request for Judicial Notice; Declaration of Diane L. McGimsey; and [Proposed] Order Filed Concurrently Herewith]**<br><br>Judge:  Hon. John W. Holcomb |

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 6

II.    PLAINTIFFS CANNOT STATE A SECURITIES FRAUD CLAIM .................................................................................................. 6

    A.     The Opposition Fails to Identify any Misstatement or Omission ......... 6

        1.     Supposed Mismanagement is Not Actionable Deceit. ............... 7

        2.     The Opposition Cannot Identify Any Actionable Misstatement or Material Omission to Support a Federal Securities Fraud Claim. ............................................................... 8

        3.     Defendants' Forward-Looking Statements are Not Actionable. ................................................................................ 13

        4.     Plaintiffs Fail to Allege Any Actionable Item 303 and 105 Claim. ................................................................................ 13

    B.     Plaintiffs Fail to Plead Scienter ............................................................. 14

    C.     Plaintiffs Fail to Plead Loss Causation ................................................. 17

III.   PLAINTIFFS FAIL TO ALLEGE CONTROL PERSON LIABILITY ................................................................................................... 18

SULLIVAN & CROMWELL LLP

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021)..................................................................................11

*In re Atossa Genetics Inc Sec. Litig.*,
  868 F.3d 784 (9th Cir. 2017) ................................................................................9

*Brody* v. *Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) .........................................................................11, 13

*City of Birmingham Relief & Ret. Sys.* v. *Acadia Pharm, Inc.*,
  2022 WL 4491093 (S.D. Cal. Sept. 27, 2022) .............................................17, 18

*Ferreira* v. *Funko, Inc.*,
  2021 WL 880400 (C.D. Cal. Feb. 25, 2021) .......................................................16

*Glazer Cap. Mgmt., LP* v. *Magistri*,
  549 F.3d 736 (9th Cir. 2008) ...............................................................................14

*Glen Holly Ent., Inc.,* v. *Tektronix, Inc.*,
  100 F. Supp. 2d 1086 (C.D. Cal. Sept. 15, 1999).................................................12

*Hoang* v. *ContextLogic, Inc.*,
  2023 WL 6536162 (N.D. Cal. Mar. 10, 2023) .....................................................15

*Khoja* v. *Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ...............................................................................10

*Lee* v. *City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ...............................................................................10

*Lloyd* v. *CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) ...............................................................................8

*Loos* v. *Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ...............................................................................18

*Macomb Cnty Emps.' Ret. Sys.* v. *Align Tech., Inc.*,
  39 F.4th 1092 (9th Cir. 2022)................................................................................9

-3-

*Macquarie Infrastructure Corp.* v. *Moab Partners, L.P.*,
    601 U.S. 257 (2024) ........................................................................................ 13, 14

*In re Marriott Int'l, Inc.*,
    31 F.4th 898 (4th Cir. 2022) ................................................................................ 11

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) ............................................................................. 18

*Okla. Police Pension and Ret. Sys.* v. *LifeLock, Inc.*,
    780 F. App'x 480 (9th Cir. 2019) ..................................................................... 7, 12

*Police Ret. Sys. of St. Louis* v. *Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ............................................................................. 12

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ........................................................................ 13, 15

*Ret. Sys.* v. *Sterling Fin. Corp.*,
    963 F.Supp.2d 1092 (E.D. Wash. Aug. 5, 2013), *aff'd*, 691 F.
    App'x 393 (9th Cir. 2017) ...................................................................................... 7

*Ronconi* v. *Larkin*,
    253 F.3d 423 (9th Cir. 2001) ............................................................................... 16

*In re Sentinelone, Inc. Sec. Litig.*,
    2024 WL 3297150 (N.D. Cal. July 2, 2024) ....................................................... 17

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ............................................................................... 16

*Studen* v. *Funko, Inc.*,
    2024 WL 2209686 (W.D. Wash. May 16, 2024) ................................................. 17

*Tellabs, Inc.* v. *Makor Issues & Rts, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................. 17

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d. Cir. 2016) ............................................................................... 17

*In re WageWorks, Inc. Sec. Litig.*,
    2020 WL 2896547 (N.D. Cal. June 1, 2020) .................................................. 17, 18

*Zucco Partners, LLC* v. *Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ............................................................................... 15

-4-

SULLIVAN & CROMWELL LLP

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

**Statutes**

15 U.S.C. § 78u-5(c)(1)(A)(i)...................................................................................... 13

SULLIVAN & CROMWELL LLP

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

## I.   INTRODUCTION

Plaintiffs' claims rest entirely on the following premise: that PacWest failed to predict that it would experience exceptional deposit and asset growth, then failed to predict interest rates rising "at the fastest pace in four decades," and that taken together these elements would cause PacWest to be swept into a sector-wide banking crisis headlined by the completely unanticipated closure of Silicon Valley Bank and Signature Bank in March 2023.  (Compl. ¶¶3, 9.)  This does not comprise a federal securities fraud under any definition of the term.

Plaintiffs' Opposition ("Opp.")[1] seeks to overcome these and other critical flaws by asking this Court to accept absurd contradictions within its own pleadings as true.  Plaintiffs repeatedly assert that PacWest both hid from its investors how unprecedented market conditions would affect its liquidity, while at the same time Plaintiffs concede that investors knew as other banks failed, PacWest's balance sheet faced those same risks.  (Compl. ¶96; Opp. at 1-2.)  And the key element the Opposition claims PacWest concealed—the "liquidity ratio" (Opp. at 1)—was fully available to any investor who wanted to determine it, as was detailed information concerning PacWest's hedges.  Finally, the Opposition fails to cite any evidentiary facts suggesting that any of Defendants' statements were either knowingly false or misleading, or that Defendants' statements caused the losses alleged, because these facts do not exist.

## II.   PLAINTIFFS CANNOT STATE A SECURITIES FRAUD CLAIM

### A.   The Opposition Fails to Identify any Misstatement or Omission

Plaintiffs contend that PacWest's "NII simulation model, and other liquidity and risk management processes" were "grossly inadequate," which caused "the Bank's liquidity [to deteriorate] to the point that PacWest could no longer operate as a stand-alone entity." (Opp. at 4.)  This bald and conclusory assertion, even if

---

[1]   Undefined capitalized terms have the same meaning used in the Motion and Opposition.

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

taken as true, fails to allege actual facts sufficient to establish a securities fraud claim.  Plaintiffs also argue that statements regarding PacWest's liquidity were materially false, purportedly because (1) Defendants did not disclose that the bank's "available for sale" (AFS) securities portfolio was unhedged and (2) Defendants did not calculate the so-called "liquidity ratio" for investors.  As shown within, each of these arguments is meritless.

### 1.	Supposed Mismanagement is Not Actionable Deceit

Plaintiffs unsuccessfully attempt to distinguish *City of Roseville Emps.' Ret. Sys.* v. *Sterling Fin. Corp.,* 963 F.Supp.2d 1092 (E.D. Wash. Aug. 5, 2013), *aff'd,* 691 F. App'x 393 (9th Cir. 2017).  (Opp. at 12.)  In *Sterling Financial*, the Ninth Circuit rejected plaintiffs' allegation that defendants intentionally kept reserve levels too low because plaintiffs failed to plead any "facts, statements, internal communications, conversations with the Individual Defendants . . . to suggest that Sterling's reserves were deliberately manipulated to conceal adverse information."  963 F. Supp.2d at 1118.  Here, Plaintiffs contend that the allegations here are factually sufficient and distinct from *Sterling Financial* because the Complaint alleges that Defendants omitted their failure to hedge the AFS portfolio.  (Opp. at 12.)  But PacWest did disclose what it did (and therefore did not) hedge, leaving Plaintiffs, as in *Sterling Financial*, with a complaint about PacWest's hedging strategy, as opposed to a deliberate attempt to deceive investors as to what that strategy was.

Plaintiffs' Opposition cites *Okla. Police Pension and Ret. Sys.* v. *LifeLock, Inc.*, 780 F. App'x 480 (9th Cir. 2019) to support its argument, but *Lifelock* is inapposite.  In *LifeLock*, the omission directly caused the challenged statements to be false, and two defendants had actual knowledge of, or recklessly failed to discover, the misrepresentations of Lifelock's alert-based products, despite former employee complaints and an FTC Consent Decree about the issue.  *Id.* at 484-85.  Neither type of fact is pleaded here.

-7-

**2.      The Opposition Cannot Identify Any Actionable Misstatement or Material Omission to Support a Federal Securities Fraud Claim**

Plaintiffs' next contention is that statements regarding PacWest's liquidity were false, either because Defendants did not disclose that the AFS Portfolio was unhedged, or because Defendants did not affirmatively calculate the "liquidity ratio" for investors, and that Defendants had special context or knowledge that would have impelled such disclosures.  None of these points is correct for at least five reasons.

*First*, Plaintiffs' Opposition concedes that Defendants' general statements of opinion about PacWest's business practices and prospects were "literally true," yet they argue they are materially misleading when taken in context with what Defendants allegedly knew about rising interest rates and PacWest's unhedged AFS Securities.  (Opp. at 13-14.)  To that end, Plaintiffs rely on *Lloyd* v. *CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016).  *Lloyd* is distinguishable.  In *Lloyd*, plaintiffs alleged that defendants had specific knowledge over multiple years that they had made certain bad loans to their largest borrower, but they failed to include these loans on their list of "non-performing or past-due loans," and they stated that—aside from that list—defendants were "not aware of any other loans…for which known credit problems of the borrower would cause serious doubts as to the ability of such borrowers to comply with their loan repayment terms."  *Lloyd*, 811 F.3d at 1203-1204 (citation and quotation marks omitted).  The Ninth Circuit held that these statements were actionable because although the statement that they had "no serious doubts" about certain loans may have been true, defendants were aware that the largest borrower "had no liquidity to meet its ongoing obligations" and had been told prior to the statement that unless the loans were modified, the borrower "could not meet its obligations and might file for bankruptcy."  In that context, the Ninth Circuit held that the "no serious doubts" statement was knowingly or recklessly false because defendants were on notice of facts that would cause

-8-

serious doubts about the borrower's ability to repay.  By contrast here, Plaintiffs fail to allege any facts that render statements concerning Defendants' comprehensive risk management process of "excellent asset quality" false.  Instead, Plaintiffs rely on the allegation that PacWest failed to disclose that it had not hedged its AFS portfolio but, as set forth in the Defendants' Motion and below, that information was disclosed.

Plaintiffs similarly rely on *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784 (9th Cir. 2017) to argue that PacWest's generic statements of corporate optimism are actionable, but *Atossa* is also readily distinguishable.  In *Atossa*, the court found that defendants' statements that "FDA clearance risk has been achieved" conflicted with what "a reasonable investor" would understand from the statements because they did not reflect defendants' personal knowledge that (1) the test had <u>not</u> received FDA clearance and (2) the FDA had expressed concerns to defendants about the lack of clearance.  *In re Atossa*, 868 F.3d at 801-03 (citation and quotation marks omitted).

Unlike *Atossa*, Plaintiffs have not sufficiently alleged Defendants had special context or knowledge about PacWest's *own* business that they did not share with investors.  Instead, the Opposition concedes (Opp. at 15) that Defendants <u>disclosed</u> the (allegedly) material context that only PacWest would possess (*e.g.*, that PacWest sold $1 billion from its AFS Portfolio at a loss).  The other allegedly relevant context (*e.g.*, interest rates might rise and other banks were having financial difficulties) was public information for which Defendants had no special insight or knowledge.[2]

*Second*, the Opposition confirms what Defendants argue in the Motion (Mot.

---

[2]    The Opposition fails to distinguish *Macomb Cnty Emps.' Ret. Sys.* v. *Align Tech., Inc.*, 39 F.4th 1092 (9th Cir. 2022).  In *Macomb*, the "clearly pessimistic backdrop" against which defendants made statements was the defendants' own situation, not their competitor's.  *Id.* at 1099.  Further, even against the backdrop of defendants' declining growth rate, the court found that defendants' statements about its "tremendous growth" were inactionable.  *Id.*

-9-

at 14-20): Plaintiffs' contention that PacWest did not adequately disclose or describe that its AFS Securities Portfolio was unhedged is both legally insufficient and factually incorrect. Defendants' moving papers establish that PacWest <u>did</u> disclose that its AFS Securities were unhedged, so the Opposition tries to misdirect by arguing that the Court must ignore those disclosures and only consider Plaintiffs' own selective excerpts. (Opp. at 16-17.) Plaintiffs' own authorities, however, make clear that is not the law. Plaintiffs rely on *Khoja* v. *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) to argue that the Court is forbidden from "consider[ing] documents incorporated by reference for their truth without converting the motion to dismiss to one for summary judgment." (Opp. at 16-17). But *Khoja* does <u>not</u> support this position. Indeed, in their Opposition to Defendants' Request for Judicial Notice (Dkt. No. 56) ("Opp. RJN"), Plaintiffs admit that "'incorporation-by-reference . . . treats certain documents as though they are part of the complaint itself,' particularly where those documents 'form[] the basis of the plaintiff's claims' or where the documents are reference [sic] 'extensively' throughout a complaint." (Opp. RJN at 2, *citing Khoja* 899 F.3d at 1002). "The doctrine prevents 'plaintiffs from selecting only portions of those documents that support their claims, while omitting portions of those documents that weaken' their claims." *Id.*

Similarly, the court in *Lee* v. *City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) held that the consideration of extrinsic evidence does not convert a Motion to Dismiss to a Motion for Summary Judgment where: (1) the complaint necessarily relies on the documents and their authenticity is not contested and (2) the document concerns a matter of public record. *Id.* at 688-89. Plaintiffs' complaint relies extensively on the SEC filings Plaintiffs contest (*see*, *e.g.*, Compl. ¶ 4), and SEC filings are unquestionably accurate. *Khoja*, 899 F.3d at 999. Thus the Court may properly rely on their contents—and the disclosures reflecting that PacWest's AFS securities portfolio was unhedged.

-10-

*Third*, Plaintiffs' Opposition fails to plausibly explain why this purported (and disclosed) hedging item made other statements misleading.  The Complaint alleges that PacWest's risk disclosure that "[t]he fair market value of [PacWest's] investment securities may be adversely affected by general economic and market conditions, including changes in interest rates," (Compl. ¶131) was misleading because Defendants "knew" interest rates would increase "in the immediate future" and made poor management decisions by not hedging the AFS Securities, which resulted in a "material undisclosed risk" that PacWest "would not be able to continue operating as a standalone entity." *Id*. at  ¶¶132; 134; 136.  Although PacWest disclosed all of the supposed omitted information and warned of the possible impact of higher interest rates on the value of the AFS portfolio, NII, and the Bank's liquidity, the Opposition nonetheless asserts that these warned-of risks had already occurred, making the warnings false.  (Opp. at 19.)  Plaintiffs, however, mischaracterize their principal authority, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021).  As the Fourth and Ninth Circuits agree, warnings of potential risks "might be misleading to a reasonable investor," but only if "the defendant 'knew that those risks had materialized'" and still failed to disclose it. *See In re Marriott Int'l, Inc.*, 31 F.4th 898, 904 (4th Cir. 2022) (quoting *In re Alphabet*, 1 F.4th at 703-04) (emphasis added).  Construing every warning of future risks as a representation about current conditions, as the Opposition argues, is not the law and would discourage companies from disclosing such risks at all.

*Fourth*, Plaintiffs' Opposition fails to satisfy the requirement that Plaintiffs allege a nexus between the alleged misstatements and omissions.  *See Brody* v. *Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (the PSLRA requires that a complaint "specify the reason or reasons why the statements made…were misleading or untrue, not simply why the statements were incomplete." (citations omitted)).  Plaintiffs' Opposition claims the Complaint satisfies this requirement because it pleads (in conclusory terms) that the

-11-

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

"problems were severe" and the "[f]ailure to hedge the AFS Portfolio led to massive losses," such that "Defendants created the impression that the AFS securities were hedged, and Defendants admit the materiality of hedging."[3]  (Opp. at 19.)  This <u>still</u> fails to explain why PacWest's statements that the value of the AFS securities portfolio "<u>may</u> decline in the future" and "<u>may be adversely affected</u> by general economic and market conditions" (Compl. ¶¶ 131, 133) were misleading or untrue, particularly when Defendants disclosed that the AFS Portfolio was unhedged.  *See Glen Holly Ent., Inc.,* v. *Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. Sept. 15, 1999).  Simply put, there is no nexus between the alleged misstatements and omissions, and none of the challenged statements concerning PacWest's investment securities and interest rate risk were rendered false or misleading at the time they were made.

*Finally*, Plaintiffs argue in opposition that Defendants spoke falsely when they supposedly touted the fact that higher interest rates would increase PacWest's NII, but failed to mention that those same increases could also have a negative impact on PacWest's AFS Portfolio and its liquidity.  (Opp. at 20.)  The Opposition again relies on *LifeLock*, 780 F. App'x 480 (9th Cir. 2019), but, as discussed above, *Lifelock* is inapposite.  In *Lifelock*, the omission—that most of the alerts were a week late—directly caused the challenged statements—that its identity theft alerts were "real-time"—to be false.  *Id.* at 483.  The alleged omissions here, however, do not directly relate to the subject matter of the alleged misstatements as in *LifeLock* and do not make the challenged statement false.  Courts have continually "declined to require a rule of completeness for securities disclosures because '[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not.'"  *Police Ret. Sys. of St. Louis* v. *Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061

---

[3]   Defendants do not agree, and have not agreed, that the fact of whether the AFS Portfolio was hedged was material at the time the disclosure was made.

(9th Cir. 2014) (quoting *Brody*, 280 F.3d at 1006 (9th Cir. 2002)).

### 3.   Defendants' Forward-Looking Statements are Not Actionable

The Opposition argues that PacWest's statements "mixed" forward-looking statements with present or historical fact, and thus are actionable as misleading. (Opp. at 21-23.)  As support, Plaintiffs cite *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017), in which the court found statements such as "our pipeline current and our pipeline future are very robust," (*id.* at 1137) contained "materially false or misleading non-forward-looking statements" (*id.* at 1148) that went beyond "feel good" optimistic statements and instead "provided a concrete description of the past and present state of the pipeline" since defendants "repeatedly reassured investors…that the number and type of prospective sales in the pipeline was unchanged, or even growing, compared to previous quarters." *Id.* at 1144.

By contrast, in this case, Defendants expressed continuing hope for a brighter future, despite the challenges.  Defendants are not liable for that brighter future not coming to pass.  As discussed in the Motion (Mot. at 24-27), forward-looking statements "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement" are the kind of statements that the PSLRA's safe harbor protects. 15 U.S.C. § 78u-5(c)(1)(A)(i).

### 4.   Plaintiffs Fail to Allege Any Actionable Item 303 and 105 Claim

The Opposition cites no "half-truths" sufficient to plead a violation of Items 303 and 105 to serve as a standalone basis for a claim under Section 10(b).  The Supreme Court held in *Macquarie Infrastructure Corp.* v. *Moab Partners, L.P.*, 601 U.S. 257, 258 (2024) that "[l]ogically and by its plain text, Rule 10b-5(b) [ ] covers half-truths, not pure omissions, because it requires identifying affirmative assertions (*i.e.*, 'statements made') before determining if other facts are needed to

-13-

make those statements 'not misleading.'" (citation omitted).  The Court re-affirmed that "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5," and "[a] duty to disclose [] does not automatically render silence misleading under Rule 10b-5(b)." *Id.* (citation and quotation marks omitted). "The failure to disclose information required by Item 303 can support a Rule 10b-5(b) claim only if the omission renders affirmative statements made misleading." *Id.*  The failure to disclose supposed trends "associated with Defendants' failure to hedge the AFS Portfolio and likelihood that rising interest rates would force it to sell securities in the AFS Portfolio at a loss," which made Defendants' statements about their "'strategies' effectively to manage liquidity" false (Opp. at 24) are not the kinds of "half-truths" regulated by Items 303 or 105, nor are they actionable under *Macquarie*.

### B. Plaintiffs Fail to Plead Scienter

Plaintiffs point to no evidentiary facts to support any inference, much less a "strong inference," that any Defendant speaker either intentionally lied or acted with deliberate recklessness as to the statement's truth, as is required by the PSLRA. *Glazer Cap. Mgmt., LP* v. *Magistri*, 549 F.3d 736, 745 (9th Cir. 2008). Plaintiffs' argument that Defendants acted with scienter thus fails.

*First*, Plaintiffs' Opposition cites no authority for the proposition that a change in the format of PacWest's "liquidity ratio" may comprise securities fraud. And in fact, the Opposition itself makes clear that PacWest did not withhold the liquidity information from investors:  Plaintiffs allege that PacWest changed the format of its liquidity disclosures to bury PacWest's Liquidity Ratio for the period Q3 2022-Q2 2023, but Plaintiffs simultaneously cite PacWest's <u>Liquidity Ratio</u> for the end of 2022 of "only 18.6%." (Opp. at 25.)  If Defendants had omitted the information necessary to assess PacWest's liquidity—let alone done so intentionally or recklessly—then Plaintiffs would not have been able to cite PacWest's Liquidity Ratio from the period in which PacWest was supposedly not

-14-

disclosing it.

*Second*, Plaintiffs fault Defendants for failing to predict the future, claiming that Defendants must have known that the interest rate changes in 2022 to 2023 would cause NII to decrease, rendering the statement that PacWest "think[s] NII can grow" intentionally false or misleading. (Opp. at 27.)  Plaintiffs have given no explanation as to how or when the Individual Defendants acquired knowledge that rendered their optimistic or forward-looking statements misleading. *See In re Quality Sys.*, 865 F.3d at 1142.

*Third*, recognizing that the Complaint fails to plead suspicious stock sales, Plaintiffs attempt improperly to amend by requesting judicial notice of Form 4s with their Opposition to address the factors courts must consider when deciding whether stock trades support an inference of scienter. *See Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 1006 (9th Cir. 2009).  This is impermissible. Having not sufficiently pleaded the *Zucco Partners* factors, the allegation that Wagner's and Black's stock sales support an inference of scienter fail.

Moreover, even if Plaintiffs could rely on the Form 4s to amend their Complaint through their Opposition, their claims are still insufficient.  Plaintiffs still fail to articulate what percentage of total shares Wagner and Black sold and why the timing of sales multiple weeks after the publication of SEC disclosures was inappropriate.  Further, the Opposition ignores that all of Black's transactions during the class period and three of Wagner's five transactions during the class period were dispositions of shares to PacWest to satisfy tax withholding obligations upon the vesting of restricted stock. (Calandra Decl. Ex 1; McGimsey Decl. Exs. 22-26.)  Because that type of transaction is not "calculated to maximize the personal benefit from undisclosed information," *Zucco*, 552 F.3d at 1005, it does not support a strong inference of scienter.  *See Hoang* v. *ContextLogic, Inc.*, 2023 WL 6536162, at *26 (N.D. Cal. Mar. 10, 2023) (finding that "non-discretionary sales 'to cover tax withholding obligations in connection with the

-15-

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

vesting and settlement of RSUs'" did not support an inference of scienter) (citation omitted).

Wagner's two open-market sales on November 25, 2022 (the "November Sale") and December 9, 2022 (the "December Sale") also do not support a strong inference of scienter. (Calandra Exs. 2-3.) The amount and percentage of shares sold were insignificant—66,659 shares in November, constituting a 6.2 percent change in his holdings, and 17,725 shares in December, constituting a 1.8 percent change in his holdings. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 987 (9th Cir. 1999) (concluding that sales of 2.6 percent and 7.7 percent of the insiders' holdings were not even "somewhat suspicious"). Additionally, the sales were temporally distinct from the alleged misstatements, corrective disclosures, and subsequent decline in PacWest's share price. The sales occurred well in advance of—three to six months before—the purported corrective disclosures. *See Ferreira* v. *Funko, Inc.*, 2021 WL 880400, at *29 (C.D. Cal. Feb. 25, 2021) (timing of insider stock sale did not suggest scienter because it "took place several months before [the] corrective disclosures"). And PacWest's share price rose after the sales. (McGimsey Decl. Ex. 15.) *See Ronconi* v. *Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (where the share price rose after an insider sold stock, the sales did not support a strong inference of scienter).

*Fourth*, Plaintiffs failed to plead that Defendants Wagner, Taylor, Olsen, or Thompson recklessly or intentionally signed filings they knew contained material misstatements. Their SOX certifications cannot support any inference of scienter.

*Fifth*, Plaintiffs have failed to plead that the Individual Defendants acted with knowledge, meaning scienter cannot be imputed to PacWest. Plaintiffs argue that "it would be absurd" for Individual Defendants to not know that the Bank's AFS Securities were disproportionately susceptible to interest rate increases because risk management and liquidity were important for the Bank's performance, and this was especially true "in the wake of the failures of Signature

-16-

Bank and SVB" even though Signature Bank and SVB failed after most of the challenged statements.  (Opp. at 31.)  Plaintiffs' conclusory claims that the Individual Defendants knew their statements were false are insufficient.  *See Studen* v. *Funko, Inc.*, 2024 WL 2209686 at *17-18 (W.D. Wash. May 16, 2024).

*Sixth*, Plaintiffs' individual scienter theories are equally deficient when considered "holistically."  *Tellabs, Inc.* v. *Makor Issues & Rts, Ltd.*, 551 U.S. 308, 326 (2007).  Plaintiffs cannot "*infer from [an] inference* that [Defendants] acted with scienter…because stacking inference upon inference in this manner violates the [PSLRA]'s mandate that the strong inference of scienter be supported by facts, not other inferenc es [sic]."  *In re Sentinelone, Inc. Sec. Litig.*, 2024 WL 3297150 at *7 (N.D. Cal. July 2, 2024) (citation and quotation marks omitted).  None of Plaintiffs' scattershot scienter theories include any allegation linking any Individual Defendant to specific knowledge that contradicted their statements.  Viewing Plaintiffs' various theories together does not remedy that fatal deficiency.

### C.    Plaintiffs Fail to Plead Loss Causation

Plaintiffs attempt to dodge their failure to plead facts sufficient to causally link to a purported loss by arguing that corrective disclosure requirements are inapplicable to a materialization of the risk theory.  To the contrary, "[w]hether the truth comes out by way of a corrective disclosure describing the precise fraud inherent in the alleged misstatements, or through events constructively disclosing the fraud, does not alter the basic loss-causation calculus."  *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 262 (2d. Cir. 2016).  And the cases relied on in the Opposition, *City of Birmingham Relief & Ret. Sys.* v. *Acadia Pharm, Inc.*, 2022 WL 4491093 (S.D. Cal. Sept. 27, 2022) and *In re WageWorks, Inc. Sec. Litig.*, 2020 WL 2896547 (N.D. Cal. June 1, 2020), are inapposite.  In *City of Birmingham*, loss causation was based on a direct causal relationship between misrepresentations and omissions related to the risk of the FDA denying a new drug approval and a press release discussing the FDA's denial of the approval.

2022 WL 4491093, at *14.  Similarly, in *Wageworks*, the court found loss causation because KPMG revealed that WageWorks's financial reporting was unreliable and the "market reacted to [these] specific revelations of misstated revenue, not merely WageWorks's poor performance."  2020 WL 2896547, at *8.  Plaintiffs here have pled no plausible causal relationship between its AFS Securities being unhedged and the stock price decreasing after statements regarding deposit outflows, PacWest considering a sale, or further deposit outflows and federal borrowing.  *Loos* v. *Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014).

## III.   PLAINTIFFS FAIL TO ALLEGE CONTROL PERSON LIABILITY

Because Plaintiffs have failed to plead a primary violation or the requisite control, Plaintiffs' Section 20(a) claim cannot stand.  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) ("To establish a cause of action under this provision, a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b-5, and then show that the defendant exercised actual power over the primary violator").

Dated:        July 23, 2024

/s/ *Adam S. Paris*
Adam S. Paris (SBN 190693)
parisa@sullcrom.com
Diane L. McGimsey (SBN 234953)
mcgimseyd@sullcrom.com
Caroline M. L. Black (SBN 350453)
blackcar@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:  (310) 712-6600
Facsimile:   (310) 712-8800

*Attorneys for Defendants PacWest Bancorp, Matthew P. Wagner, Paul W. Taylor, Bart R. Olson, William J. Black and Kevin Lewis Thompson*

-18-